**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-13219

Non-Argument Calendar

_____

FERNANDO JOSE OBANDO-BRIZUELA,

REBECCA HOMER BUCARDO-ESPINOSA,

LINDSEY FERNANDA OBANDO-BUCARDO,

FERNANDO YEMIL OBANDO-BURCADO,

*Petitioners,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A240-182-141

_____

Before GRANT, KIDD, and WILSON, Circuit Judges.

PER CURIAM:

Fernando Jose Obando Brizuela, proceeding pro se and on behalf of his family, petitions for review of the Board of Immigration Appeals's final order affirming the denial of his claims for relief from removal. After careful review, we deny his petition.

## I. BACKGROUND

Obando, a native and citizen of Nicaragua, entered the United States through Texas with his wife and two minor children. Shortly thereafter, Obando and his family were served with notices to appear, charging them with being removable under 8 U.S.C. § 1182(a)(6)(A)(i). Through counsel, they each conceded removability.

Obando applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), designating his family as derivative beneficiaries of the requested relief. In a declaration accompanying his application, Obando asserted that he was persecuted in Nicaragua because he was outspoken in his criticism of the governing regime.

Along with his application, Obando supplied photos of police officers standing outside of the barbershop he ran out of his home, where he often engaged in conversations with his clients about political issues. He also provided the U.S. Department of State's 2021 Country Report on Human Rights Practices for Nicaragua.

During a merits hearing, Obando further testified to the following relevant information. Two known opposers of the governing regime were clients of his barbershop, and government sympathizers threatened Obando with "consequences" if he continued to serve the opposition. However, neither Obando nor anyone in his family belonged to any political organizations. They likewise had never been arrested, detained, interrogated, or imprisoned for voicing their political opinion.

But, in March 2019, armed police stood in front of Obando's business and observed his patrons for several hours. Obando feared being arrested or harmed by police, as he had planted a flag in support of the political opposition outside of his house. But police never attempted to enter his business, nor did the government ever interfere with his operations. Indeed, even after he was identified as an opposer to the government, his business registration continued to be renewed. Similarly, the threats from government sympathizers never materialized into anything more than "intimidation." Nevertheless, Obando and his family left Nicaragua in December 2021 using valid Nicaraguan passports, which were issued after the government identified Obando as a political opponent.

Obando further explained that he feared returning to Nicaragua because he could be falsely imprisoned or harmed based on his status as a political opponent. He did not attempt to relocate to another area of the country because he believed that the situation would be the same. Notably, Obando still had family, including his parents, in the country and they had not been threatened or asked

about his whereabouts. Obando was also unaware of any outstanding arrest warrants for him or his family.

An immigration judge found Obando's testimony credible but nonetheless denied relief and ordered Obando and his family removed to Nicaragua. The immigration judge found it notable that Obando did not belong to a political organization and was never arrested, detained, interrogated, or imprisoned while living in Nicaragua. He further reasoned that intermittent threats by government sympathizers and the police presence outside of Obando's business did not rise to the level of persecution. The immigration judge therefore denied Obando's application for asylum and, because he could not meet this lower burden, found him ineligible for withholding of removal.

The immigration judge likewise denied Obando's request for CAT relief, as nothing in the record established that Obando or his family would be subjected to torture if returned to Nicaragua. The judge reiterated that neither Obando nor his family had ever been arrested, detained, interrogated, or imprisoned, and further found persuasive that Obando was able to operate his business without issue until his family's unimpeded departure from the country.

In his counseled brief on appeal to the BIA, Obando argued that the immigration judge: (1) failed to consider the cumulative impacts of the harassment and threats when evaluating persecution; (2) overemphasized the lack of physical harm; (3) conducted an improper "nexus analysis"; (4) failed to meaningfully engage

with country conditions evidence that corroborated his fear of future persecution; (5) failed to thoroughly evaluate whether internal relocation was safe and reasonable; and (6) improperly focused on the fact that he had not previously been tortured when denying CAT relief.

The BIA dismissed Obando's appeal. As to asylum and withholding of removal, the BIA found that the immigration judge recounted Obando's experiences consistently with his testimony and there was no indication that he "considered the evidence in isolation rather than in the aggregate." The BIA further found that the immigration judge's denial of relief was "consistent with controlling law," and Obando failed to cite any apt cases to suggest that his cumulative experiences with "harassment, threats, and intimidation" constituted persecution. It therefore agreed with the immigration judge that Obando had not shown that the vague threats made to him, if carried out, rose to the level of persecution. Because the BIA affirmed the immigration judge's past-persecution finding, it declined to address Obando's arguments regarding nexus and relocation.

The BIA further concluded that the allegedly overlooked country-conditions evidence was not included in the record and therefore "could not have been considered." Finally, with respect to CAT relief, the BIA found that the immigration judge did not rely solely on a lack of previous torture in denying Obando's claim. Rather, the BIA found that the immigration judge "accurately" set forth the controlling law and facts to conclude that Obando had

not established that he or his family would more likely than not be tortured if they returned to Nicaragua. It therefore found no basis to disturb the immigration judge's determination.

Obando now petitions our Court for review of this decision.

## II. STANDARD OF REVIEW

In considering a petition for review, we review the BIA's decision as the final judgment, except to the extent it expressly adopts the immigration judge's decision. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). Where the BIA explicitly agrees with the immigration judge's reasoning, we will also review the immigration judge's decision to that extent. *See id.*

We review legal conclusions de novo and any factual findings for substantial evidence. *Id.* Under the substantial-evidence standard, we view the evidence in the light most favorable to the agency's decision, draw all reasonable inferences in favor of that decision, and "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010) (citation omitted).

## III. DISCUSSION

Liberally construing his pro se brief before our Court, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), Obando offers several reasons as to why the denial of his requests for relief was legally and factually erroneous. We are not persuaded by any of these arguments. We begin our discussion by looking at

Obando's arguments regarding asylum and withholding of removal and then turn to his challenges related to CAT relief.

A. *Asylum and Withholding of Removal*

To be eligible for asylum, Obando must, with specific and credible evidence, establish (1) past persecution on account of his political opinion, or (2) a well-founded fear that he will be persecuted in the future on account of his political opinion. *Diallo*, 596 F.3d at 1332; 8 U.S.C. § 1101(a)(42)(A). Obando must also meet the "nexus" requirement by demonstrating his holding of a particular political opinion "was or is at least one central reason for his persecution." *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1158 (11th Cir. 2019) (citation modified). He similarly must show that his "life or freedom would be threatened in [his] country because of [his] . . . political opinion" to qualify for withholding of removal. 8 U.S.C. § 1231(b)(3)(A).

As an initial matter, despite Obando's arguments to the contrary, we find no legal error in either the BIA's or the immigration judge's analysis. In conducting its review of Obando's appeal, the BIA correctly noted that "the cumulative effects of the incidents" alleged must be considered in assessing whether Obando experienced past persecution. *Diallo*, 596 F.3d at 1333 (citation modified). Applying the appropriate standards, the BIA found that the immigration judge recounted Obando's experiences consistent with his hearing testimony and appropriately considered such evidence "in the aggregate."

The BIA likewise correctly cited and applied our controlling caselaw in determining whether those cumulative events constituted persecution. This caselaw provides that persecution is "an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation" and that "mere harassment does not constitute persecution." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1353 (11th Cir. 2009).

Obando nonetheless contends that he was incorrectly required to show that he was physically injured or detained while in Nicaragua to meet his burden for asylum eligibility. However, there is no indication that the BIA or the immigration judge held him to such an improper evidentiary standard. Rather, the record shows that the immigration judge explicitly considered the parts of Obando's testimony that did not involve such harm. The BIA also specifically distinguished the cases Obando relied upon to support the proposition that cumulative threats or harassment can amount to persecution, noting that those cases involved extreme scenarios that were not present in the instant case.

The determination that Obando was ineligible for asylum and withholding of removal is also supported by substantial evidence. In short, Obando failed to show that the harassment he experienced or the vague threats he received, even if they ever materialized, rose to the level of persecution. While police stationed themselves outside of Obando's home business for several hours, they never arrested, detained, or interrogated him. Nor did the government ever otherwise attempt to interfere with the operation

of his business. Obando and his family were also able to secure Nicaraguan passports and leave the country without issue, despite that Obando was known to the government as a member of the opposition.

While Obando asserts that the BIA and immigration judge failed to "meaningfully engage" with certain country conditions evidence that would have corroborated his purported fear of future persecution, he failed to properly present such evidence for review. The only country conditions evidence Obando submitted to the immigration judge was the U.S. Department of State's 2021 Country Report. Before the BIA, however, Obando attempted to argue that the immigration judge failed to consider reports from Human Rights Watch and Amnesty International and quoted language from the Department of State's 2023 Human Rights Report. Because these items were not submitted to the immigration judge, they were not in the administrative record and the BIA correctly concluded that they were not available for its review. We also cannot consider this evidence in the first instance.[1] *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

We note that the 2021 Country Report—which was in the administrative record—indicated that "arbitrary arrests occurred

---

[1] In his petition, Obando also asserts that the BIA and immigration judge misapplied the nexus requirement and failed to meaningfully consider whether internal relocation was feasible. We will not address these arguments because these issues were not reached by the BIA. *Ponce Flores v. U.S. Att'y Gen.*, 64 F.4th 1208, 1222 n.7 (11th Cir. 2023).

regularly, particularly of those the government deemed active opposition members or participants in previous prodemocracy protests." While this fact may support a conclusion contrary to that reached by the BIA, that is not enough to justify a reversal of the agency's findings considering the other evidence before our Court. *See Diallo*, 596 F.3d at 1332; *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006). And because Obando was unable to satisfy the standard for asylum, he likewise was unable to satisfy the "more stringent standard" for withholding of removal. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005); *see Kazemzadeh*, 577 F.3d at 1353.

### B. *CAT Relief*

To be eligible for CAT relief, Obando must establish "that it is more likely than not that he . . . would be tortured if removed to" Nicaragua. 8 C.F.R. § 1208.16(c)(2); *see Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020). In evaluating entitlement to CAT protection, a court considers all relevant evidence, including "(1) whether the applicant has experienced past torture; (2) whether [he] could avoid future torture by relocating within the country; and (3) evidence about wider country conditions, including whether there have been gross, flagrant, or mass violations of human rights in the country." *K.Y. v. U.S. Att'y Gen.*, 43 F.4th 1175, 1181 (11th Cir. 2022), *overruled in part on other grounds*, *Santos-Zacaria v. Garland*, 143 S. Ct. 1103 (2023). For similar reasons to our analysis above, we find no error in the determination that Obando did not demonstrate his eligibility for such relief.

As recognized by the BIA in conducting its review, the immigration judge did not solely rely on a lack of prior torture in evaluating Obando's claim. Rather, the immigration judge noted that the law required him to consider any past torture as part of the broader CAT inquiry. *See id.* And while the immigration judge found notable certain past events—including a lack of prior arrests—he noted such facts in concluding that nothing in the record established that Obando or his family *would be tortured if they returned to Nicaragua in the future*.

Substantial evidence also supports the determination that Obando was ineligible for CAT relief. While Obando testified to being threatened based on his association with known political opponents, he also conceded that these threats never materialized in a physical manner and that he operated his business peacefully until his departure from the country. Further, there is no indication that the Nicaraguan government is actively searching for Obando or his family. Obando testified that he still has family members living in Nicaragua without issue, that no authorities have inquired about his whereabouts, and that he is unaware of any outstanding arrest warrants. Obando therefore failed to establish that it was more likely than not that he or his family would be tortured if they returned to Nicaragua. 8 C.F.R. § 208.18(a)(1); *Lingeswaran*, 969 F.3d at 1293.

## IV. CONCLUSION

For the reasons outlined above, we **DENY** Obando's petition for review.